**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

NOT FOR PUBLICATION

<table>
<tr><td>
NAVARRA S. SCOTT,<br><br>
                    Plaintiff,<br><br>
          v.<br><br>
THE UNITED STATES,<br><br>
                  Defendant.
</td><td>
)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)
</td><td>
No. 26-455<br><br>
Filed: April 27, 2026
</td></tr>
</table>

**MEMORANDUM OPINION AND ORDER**

Plaintiff Navarra S. Scott, proceeding pro se, alleges that she has suffered various wrongs throughout her life on account of misclassification of her race, ethnicity, and culture. Plaintiff also alleges that she has been persecuted by the U.S. Constitution and takes issue with certain aspects of U.S. foreign policy. Plaintiff's Application to Proceed In Forma Pauperis ("IFP Application") is currently pending before the Court. For the reasons explained below, the Court **GRANTS** Plaintiff's IFP Application and **DISMISSES** Plaintiff's Complaint.

## I.  BACKGROUND

On March 20, 2026, Plaintiff filed this action without paying the requisite filing fee. *See* Pl.'s Compl., ECF No. 1. On the same day, Plaintiff filed an IFP Application, asking the Court to permit her to proceed without paying the filing fee. *See* ECF No. 2. In her Complaint, Plaintiff alleges that she "ha[s] been consistently misclassified of [her] race[,] ethnicity[,] and culture from birth." ECF No. 1 at 2. Plaintiff states that her "race is mankind and ethnicity is Hebrew and [] culture is the law of the Torah." *Id.* She appears to argue that "the school system and [her] parents" required her to honor the U.S. Constitution rather than her "true identity and purpose." *Id.* She

also alleges that, in 1948, Congress fraudulently formed an agreement with Israel to supply military and foreign aid to Egypt and Jordan "to keep the peace with Israel." *Id.* She demands judgment in the amount of $45 million—$1 million for each year she has been alive—against the United States for financial reparations as well as "the land that was promised by God Almighty." *Id.* at 3.

## II.  LEGAL STANDARDS

### A.      IFP Applications

A court may waive the filing fees and allow a plaintiff to proceed IFP if he or she is "unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1).  Whether to allow a plaintiff to proceed IFP is left to the discretion of the court, based on information submitted by the plaintiff. *Thompson v. United States*, 99 Fed. Cl. 21, 24 (2011).  Being "unable to pay such fees," as contemplated by § 1915(a)(1), "means that paying [the filing] fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute." *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (2007) (recognizing that the burden of demonstrating an inability to pay is not a heavy one).

### B.      Dismissal Under 28 U.S.C. § 1915 for Frivolousness or Failure to State a Claim

A court "shall dismiss" the case of a plaintiff proceeding IFP "at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious" or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B); *see, e.g.*, *Taylor v. United States*, No. 25-932, 2025 WL 1589283, at *2 (Fed. Cl. June 5, 2025) (dismissing the plaintiff's case as frivolous and for failing to state a claim); *Alvar v. United States*, No. 25-1131, 2025 WL 1951847, at *2 n.4 (Fed. Cl. July 16, 2025) ("The frivolity of [p]laintiff's baseless claim . . . could also provide a separate ground for dismissal.").  A complaint "is frivolous where it lacks an arguable

2

basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  *Pupols v. U.S. Pat. & Trademark Off.*, 413 F. App'x 232, 234 (Fed. Cir. 2011) (citing *Ashcroft*, 556 U.S. at 677–78).

### C.     Tucker Act Jurisdiction

"The Court of Federal Claims is a court of limited jurisdiction."  *Marcum LLP v. United States*, 753 F.3d 1380, 1382 (Fed. Cir. 2014).  Before the Court can reach the merits of a plaintiff's claim, it must first assure itself of the existence of subject-matter jurisdiction.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).  The Tucker Act vests this Court with jurisdiction over any suit against the United States for money damages "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort."  28 U.S.C. § 1491(a)(1). "The Tucker Act, however, does not create 'substantive rights[,]'" nor does it grant jurisdiction for "every claim invoking the Constitution, a federal statute, or a regulation."  *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 322 (2020) (quoting *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009) and then quoting *United States v. Mitchell*, 463 U.S. 206, 216 (1983)). Instead, to invoke jurisdiction under the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages" from the United States.  *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005).  "[T]he court must address jurisdictional issues, even *sua sponte*, . . . whether raised by a party or not."  *St. Bernard Par. Gov't v. United States*, 916

3

F.3d 987, 992–93 (Fed. Cir. 2019).  If the Court lacks subject-matter jurisdiction, it must dismiss the action in accordance with Rule 12(h)(3) of the Rules of the United States Court of Federal Claims ("RCFC").

Although filings by pro se litigants are liberally construed, pro se plaintiffs maintain the burden of establishing subject matter jurisdiction by a preponderance of the evidence.  *Curry v. United States*, 787 F. App'x 720, 722 (Fed. Cir. 2019) (citing *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987)).  "[T]he leniency afforded to *pro se* litigants with respect to mere formalities does not relieve them of jurisdictional requirements."  *Id.*

## III.  DISCUSSION

### A.     Plaintiff's IFP Application is Granted.

Plaintiff's IFP Application meets the requirements of 28 U.S.C. § 1915(a)(1).  In her IFP Application, Plaintiff states that she is currently unemployed and is paying her expenses using "survivor benefits."  ECF No. 2 at 1–2.  Although Plaintiff does not explain what she means by "survivor benefits," nor how much she receives in such benefits, the Court presumes that she is referring to a category of Social Security benefits.  *See* Social Security Administration, *Survivor Benefits*, https://www.ssa.gov/survivor (last visited Apr. 15, 2026) ("Survivor benefits provide monthly payments to eligible family members of people who worked and paid Social Security taxes before they died.").  Plaintiff also states that she does not own any property and that she is "in debt."  ECF No. 2 at 2.  The Court finds that requiring Plaintiff to pay the filing fee would present considerable hardship.  *See Fiebelkorn*, 77 Fed. Cl. at 62.  The Court therefore grants Plaintiff's request to proceed IFP.

B.      **Plaintiff's Complaint is Dismissed.**

Consistent with its duties under 28 U.S.C. § 1915(e)(2) and RCFC 12(h)(3), the Court has reviewed Plaintiff's Complaint and determined that it must be dismissed.  Plaintiff does not assert a claim within this Court's jurisdiction, and, alternatively, her Complaint is frivolous.

As to jurisdiction, the Court must dismiss Plaintiff's Complaint first because it identifies no applicable money-mandating provision of law on which Plaintiff may base her claims, and second because the claims stated in the Complaint do not appear to be against the United States. The Tucker Act limits the jurisdiction of the Court to hear only a specific subset of legal actions: (1) claims for money damages against the United States that are founded upon a provision of law that mandates compensation by the Government for the "damages sustained," *Mitchell*, 463 U.S. at 216–17; (2) claims founded upon contracts with the United States that are "either express or implied in fact," not "in law," *Hercules, Inc. v. United States*, 516 U.S. 417, 423 (1996); and (3) actions to recover "illegal exactions of money by the United States," *Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004).

In the jurisdiction section of her Complaint, Plaintiff does not state the specific basis for her claim, instead only generally describing the Court's jurisdiction.  *See* ECF No. 1 at 1 ("The United States Court of Federal Claims has jurisdiction over a wide range of claims against the government including, but not limited to, contract disputes, bid protests, takings claims, tax refund suits, patent and copyright matters, Indian claims, civilian and military pay cases, and vaccine cases.").  Plaintiff does not, however, identify how her specific claim might fall into one of the aforementioned categories of the Court's jurisdiction.  Plaintiff goes on to cite 42 U.S.C. § 1996, the "American Indian Religious Freedom Act," as a basis for the Court's jurisdiction.  *Id.*  She also cites *Worcester v. Georgia* for the proposition that "Indian nations are distinct, independent

5

political communities retaining their original natural rights, affirming tribal sovereignty against state encroachment." 31 U.S. 515 (1832). Finally, she cites *Dred Scott v. Sandford*, 60 U.S. 393 (1857), without further explanation. None of these sources of law are money-mandating.

The "American Indian Religious Freedom Act" is a Joint Resolution establishing a federal policy of "protect[ing] and preserv[ing] for American Indians their inherent right of freedom to believe, express, and exercise the[ir] traditional religions . . . including but not limited to access to sites, use and possession of sacred objects, and the freedom to worship through ceremonials and traditional rites." Pub. L. No. 95–341, § 1, 92 Stat. 469, 469 (1978). As the United States Supreme Court has stated, "[n]owhere in the law is there so much as a hint of any intent to create a cause of action or any judicially enforceable individual rights," *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 455 (1988), let alone a right that mandates compensation from the Government for damages sustained. Thus, this resolution cannot serve as the basis for this Court's jurisdiction.

The other sources of law on which Plaintiff relies as bases for jurisdiction similarly fail because they do not provide a substantive basis for money damages. In *Worcester*, the Supreme Court found that the state's arrest of a white missionary for preaching to the Cherokee on tribal lands without a license was unlawful because the state of Georgia had no lawful right to govern the territory of a separate sovereign. *See* 31 U.S. at 595. *Worcester* has since been abrogated. *See, e.g.*, *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 141 (1980) ("Long ago the Court departed from [the] view that the laws of [a State] can have no force within reservation boundaries." (internal quotation marks omitted)); *Nevada v. Hicks*, 533 U.S. 353, 361 (2001) ("Our cases make clear that the Indians' right to make their own laws and be governed by them does not exclude all state regulatory authority on the reservation."). Plaintiff fails to explain how *Worcester*

6

supports her assertion of Tucker Act jurisdiction.  Nevertheless, *Worcester* cannot sustain her proposition that "Indian nations . . . retain[] their original natural rights, affirming tribal sovereignty against state encroachment,"  ECF No. 1 at 1, because *Worcester* has been abrogated. *See Oklahoma v. Castro-Huerta*, 597 U.S. 629, 643 (2022) ("[T]he *Worcester*-era understanding of Indian country as separate from the State was abandoned later in the 1800s.  After that change, Indian country in each State became part of that State's territory.").  More importantly here, even if *Worcester* remained good law, it did not establish any money-mandating provision upon which this Court's jurisdiction could be based.

Plaintiff's reference to the Supreme Court's decision in *Dred Scott* similarly fails to provide a money-mandating provision of law because the passage of the Thirteenth and Fourteenth Amendments superseded and effectively nullified that case.  *See Keyes v. Sch. Dist. No. 1*, 609 F. Supp. 1491, 1495 (D. Colo. 1985) ("The *Dred Scott* opinion was, of course, reversed by the adoption of the Thirteenth and Fourteenth Amendments to the United States Constitution after the Civil War."), *aff'd*, 895 F.2d 659 (10th Cir. 1990).  Even if *Dred Scott*'s holding had not been nullified, it fails to provide a jurisdictional basis for Plaintiff's claims because its holding did not purport to establish any money-mandating source of law.

Thus, none of the sources of law on which Plaintiff relies—the American Indian Religious Freedom Act, *Worcester*, or *Dred Scott*—support her assertion that this Court has subject-matter jurisdiction over her claims.  Because Plaintiff cites no applicable money-mandating source of law on which she may base her claims, the Court must dismiss her Complaint for lack of jurisdiction. *Navajo Nation*, 556 U.S. at 290 (explaining that the Tucker Act does not "create[] substantive rights" but rather "operate[s] to waive sovereign immunity for claims premised on other sources of law (*e.g.*, statutes or contracts)").

Moreover, the Court lacks jurisdiction over Plaintiff's claims against parties other than the United States. Many of her allegations do not appear to be targeted at the United States specifically. *See* ECF No. 1 at 2 (stating that she "ha[s] been consistently misclassified of [her] race[,] ethnicity[,] and culture from birth," but not specifying who or what misclassified her); *id.* (stating that the school system and her parents converted her to honor the U.S. Constitution); *id.* (expressing frustration with her "disobedient parents"). This Court's jurisdiction does not extend beyond claims against the Federal Government. *Curie v. United States*, 163 Fed. Cl. 791, 808–09 (2022) ("It is well established that [the Court of Federal Claims] lacks jurisdiction to hear claims against state, local officials, or private individuals or entities, who are not federal employees.") (collecting cases); *see* 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States . . . ."). Thus, Plaintiff's claims involving her parents cannot be the basis for the Court's jurisdiction. *Edelmann v. United States*, 76 Fed. Cl. 376, 380 (2007) (dismissing claims against private parties for lack of jurisdiction). And Plaintiff's claims involving "the school system" also fail to serve as a viable basis for the Court's jurisdiction because such claims are presumably against a state or local governmental entity, rather than the United States. *See Brown v. Bd. of Ed. of Topeka*, 347 U.S. 483, 493 (1954) ("[E]ducation is perhaps the most important function of state and local governments."); *Treviño v. United States*, 557 F. App'x 995, 998 (Fed. Cir. 2014) (explaining the Court lacks jurisdiction over "states, localities, state and local government officials, [or] state courts"). To the extent Plaintiff's Complaint can be construed as alleging federal government action within "the school system," she does not identify any actions taken by federal employees or the federal government as the basis of her claims. *See Burga v. United States*, No. 25-490, 2025 WL 2840728, at *4 (Fed. Cl. Oct. 7, 2025) ("For the United States to be the proper defendant of

the claim, the federal government's actions must be the cause of the alleged harm." (citing *Mitchell*, 463 U.S. at 216–17)), *appeal dismissed*, No. 2026-1242, 2026 WL 636788 (Fed. Cir. Mar. 6, 2026).

Alternatively, even if the Court had subject-matter jurisdiction over Plaintiff's claims, the Court would dismiss the Complaint as frivolous. 28 U.S.C. § 1915(e)(2)(B)(i); *Neitzke*, 490 U.S. at 325 (explaining that "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact"). Plaintiff alleges that her "race[,] ethnicity[,] and culture" have "been consistently misclassified . . . from [her] birth." ECF No. 1 at 2. But Plaintiff's allegations lack any plausible factual or legal basis. *See, e.g.*, *id.* (stating that she has "been persecuted and outcasted by many people" but not specifying who these people are); *id.* ("[T]he U.S. Constition [*sic*] is a [*sic*] attempt murder on my life."); *id.* (the "agreement Congress created with the Imposters of Israel . . . is fraud and a mockery to God Almighty"). Although Plaintiff asserts that "[her] constitutional and civil rights mandated in the Torah were violated by the USA and state constitution and disobedient parents that did not enforce the Law of God Almighty," *id.*, she does not explain how her rights were violated or even specify what cause of action she brings. Even if she did, the Court would not have jurisdiction over claims to enforce her civil rights. *See Ouattara Hema v. United States*, 607 F. App'x 989, 990 (Fed. Cir. 2015) ("[T]he Court of Federal Claims lacks jurisdiction to entertain general civil rights claims that are not based upon an appropriate money-mandating provision.").

Plaintiff's demand for a $45 million judgment also lacks any arguable basis in fact or law. She requests "$1 million for every year [she] was born and suffered under man made law," but the

$1 million figure appears to be entirely arbitrary.  ECF No. 1-1 at 1.[1]  *See Maat El v. United States*, No. 24-1563, 2024 WL 4851311, at \*4 (Fed. Cl. Nov. 21, 2024) (holding that "obviously fictional [damages] number further underscores the Complaint's frivolousness"); *Thomas v. United States*, No. 11-572C, 2012 WL 514712, at \*2 (Fed. Cl. Feb. 16, 2012) (finding plaintiff's factual allegations "plainly frivolous" where they involved, among other things, "nonsensical damages"); *Akinro v. United States*, 91 Fed. Cl. 650, 658 (2010) (finding that demand for trillions of dollars "rise[s] to the level of the irrational or the wholly incredible").  Because none of Plaintiff's allegations meet the bar of plausibility, the Court alternatively dismisses her Complaint as frivolous under § 1915(e)(2)(B)(i).  *Alvar*, 2025 WL 1951847, at \*2 n.4.

Finally, the Court finds that transfer to district court under 28 U.S.C. § 1631 is not appropriate.  Pursuant to § 1631, the Court of Federal Claims must transfer civil claims that are beyond its jurisdiction to a court in which the action could have been brought provided that transfer is "in the interest of justice."  *Cooper v. United States*, 104 Fed. Cl. 306, 314 (2012) (quoting 28 U.S.C. § 1631).  Transfer is in the interest of justice when a litigant's claims "appear to the Court to be 'nonfrivolous and as such should be decided on the merits.'"  *Id.* (quoting *Galloway Farms, Inc. v. United States*, 834 F.2d 998, 1000 (Fed. Cir. 1987)).  Here, Plaintiff's claims are frivolous, so transfer is not warranted.

---

[1] Plaintiff also requests that the Court provide "the land that was promised by God Almighty."  ECF No. 1 at 3.  Even if Plaintiff had a plausible claim, the Court would not have jurisdiction to grant injunctive or other equitable relief in the circumstances alleged.  The Tucker Act authorizes the Court to grant some forms of equitable relief in cases where such relief is "an incident of and collateral to" a judgment in a matter within the Court's jurisdiction.  28 U.S.C. § 1491(a)(2).  Thus, the Court may only grant equitable relief when it is "'tied and subordinate to' a money judgment."  *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998) (quoting *Austin v. United States*, 206 Ct. Cl. 719, 723 (1975)).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's IFP Application (ECF No. 2) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED**.  The Court **CERTIFIES** that any appeal from this decision would not be taken in good faith.  *See* 28 U.S.C. § 1915(a)(3).  The Clerk is directed to enter judgment accordingly.

  **SO ORDERED**.


Dated: April 27, 2026            */s/ Kathryn C. Davis*    
                   KATHRYN C. DAVIS
                   Judge